IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                                  No. CR 10-1361 JB

JARIN P. SCOTT,

      Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on the Defendant's Appeal of Detention Order, filed May 11, 2010 (Doc. 12). The primary issue is whether the Court should release Defendant Jarin P. Scott from detention on conditions pending trial. The Court has carefully reviewed the Defendant's Appeal of Detention Order and Plaintiff United States of America's Response to Defendant's Appeal of Detention Order [Doc. 12], filed May 18, 2010 (Doc. 16), listened to the detention and preliminary hearing before the Honorable Richard L. Puglisi, Chief United States Magistrate Judge for the United States District Court for the District of New Mexico, and reviewed the Pretrial Services Report.[1] Because of the crime charged, and the strong evidence against Scott, the Court concludes that he has not overcome the presumption against release and will not release him pending trial.

---

[1] Scott has not requested a hearing on this motion, and, upon review of the record, the Court does not believe that one would aid in the disposition of this appeal. The Court thus decides the case on the record alone. Cf. United States v. Koenig, 912 F.2d 1190, 1192-93 (9th Cir. 1990)("[T]he district court is not required to start over in every case, and proceed as if the magistrate's [detention] decision and findings did not exist. . . . It should review the evidence before the magistrate and make its own independent determination whether the magistrate's findings are correct, with no deference.").

**FACTUAL BACKGROUND**

Scott is nineteen-years old. He was born in Shiprock, New Mexico, but shortly after his birth, his parents moved to Tucson, Arizona, where he resided until 2003. He has lived in Shiprock for the past seven years. In addition to his parents, Scott has four younger siblings -- Jarilyn (14), Jolynn (8), Jaric (6), and Jaden (6 months) -- and a grandmother, with whom he is very close.

Scott has been a full-time college student for the last year and a half, and is close to obtaining his associates degree at San Juan Community College in Farmington, New Mexico. He has completed three semesters and needs one more semester to get his degree. He had plans to transfer to NCI Technical College in Phoenix, Arizona, where he was recently accepted, to start working on his bachelor's degree in mechanical engineering. Scott has funded his education through scholarships and grants he has earned, as well as through his steady past employment, although he has no current income. At the time of the alleged offense, Scott was living with his parents and worked at a Kentucky Fried Chicken restaurant in Shiprock from 2007 to 2009. He reported that he currently has no assets or liabilities. His father is not working at this time because there is not enough work at his company. His mother works for a government agency.

Scott has not heretofore been in any serious trouble with legal authorities. With the exception of a traffic ticket on two occasions, Scott has no criminal history. He has no history of violence or drug abuse.

The allegations in this case involve an apparent dispute between Scott and another man, Jefferson Nez. On April 12, 2010, at approximately 10:35 p.m., Shiprock Police Sergeant Dave Johnson was conducting an investigation unrelated to this matter near the Chaco River Apartments in Shiprock when he heard two gunshots. Johnson looked in the direction where the shots were fired, which was approximately fifty yards away from him, and observed a light-colored extended

cab pickup truck driving away at a high rate of speed. He immediately contacted dispatch and gave a description of that vehicle.

Moments later, a Navajo police officer, Ernest Sanisya, responded to the area and saw a truck matching the description that Johnson reported. Sanisya stopped the truck, a 2002 GMC pickup, and found two people inside: (i) the driver, co-Defendant Chancey Begay; and (ii) his passenger, Scott. Sitting in plain view on the right-rear passenger-side floor board was a Remington Hawk, model 982, 12-gauge shotgun. Law-enforcement officers seized and confiscated the alleged weapon involved. They found the chamber to be empty, but they located two rounds in the magazine.

Criminal Investigator Dale West arrived on scene and took over the investigation. He interviewed the two occupants. First, he spoke to Begay. After waiving his Miranda[2] rights, Begay stated that Scott, his friend whom he has known for many years, asked him earlier in the evening to give him a ride to the Chaco River Apartments. Begay agreed to do so. Begay stated that, when they arrived at the apartment complex, Scott instructed him to drive slowly through the area. Begay explained that, as he drove through the apartments, Scott pointed a shotgun out the passenger-side window and fired it twice. Begay said that, as soon as Scott fired, he quickly drove from the apartments, and the police shortly thereafter stopped him.

Next, West spoke with Scott. Scott has been cooperative with law enforcement. After waiving his Miranda rights, Scott confessed to firing the weapon at an apartment in the Chaco River complex. He explained that his intent was to scare Nez, his ex-girlfriend's brother. According to Scott, he blamed Nez for causing the recent breakup with his girlfriend. As Scott explained, he and his girlfriend had lived together for three years, parting ways approximately one month before the

---

[2] Arizona v. Miranda, 384 U.S. 436 (1966).

shooting. Scott complained that, during the time that he and his girlfriend were together, Nez would routinely come by the residence and try to get his girlfriend drunk. Scott explained to West that "he was thinking about all those things Nez had done in the past," and he felt that he needed to do something about it. The "something" he did was to take two shots at the apartment where he believed Nez to be.[3]

Inside the apartment at the time of the shooting were six people: Nez, Kristen Benally, Michael Walker, and three juveniles, ages sixteen years, seven years, and eight months. Later, West inspected the apartment and observed that two separate windows, one in the living room and the other in a bedroom, were damaged as a result of the shooting.

## PROCEDURAL BACKGROUND

Scott appeared on April 30, 2010, before Chief Magistrate Judge Puglisi, for a detention and preliminary hearing on a criminal complaint charging assault with a dangerous weapon in Indian Country. Before that hearing, the United States moved to have Scott detained pursuant to 18 U.S.C. § 3142. See Motion for Detention Hearing, filed April 29, 2010 (Doc. 3). The bail report indicates Scott provided two phone numbers for verification purposes; however, both numbers were not in service. Based on the lack of a verifiable residence, unknown family/employment/ community ties, and uncorroborated educational status, Pretrial Services believes that the are factors indicating a risk of nonappearance. Because of the nature of the alleged offense and the weapon involved, Pretrial Services recommends that the Court detain Scott, as it appears there is no condition or combination of conditions that will reasonably assure his appearance as required or reasonably assure the safety of the community. After hearing argument, Chief Magistrate Judge Puglisi ordered Scott to remain

---

[3] Scott and Begay reside in the same neighborhood. Nez resides three to five miles from Scott.

in custody pending trial on the grounds that, based on the nature of the alleged offense and the allegation of a weapon involved, there was a risk of danger to the community. See Detention Order Pending Trial at 2, filed April 30, 2010 (Doc. 10). Subsequently, on May 11, 2010, the federal grand jury returned an indictment in case No. CR 10-1361 JB, charging Scott with assault with a dangerous weapon, contrary to 18 U.S.C. §§ 1153 and 113(a) and 2, and use of a firearm in relation to a crime of violence, contrary to 18 U.S.C. § 924(c)(1)(iii) and 2.

Scott has been incarcerated for nearly a month, and there are concerns about his safety. Scott appeals the detention order that Chief Magistrate Judge Puglisi entered on April 30, 2010. Scott has attached to his Appeal a letter from his parents, Yvonna and Manuel Scott, which describes his accomplishments. In a letter attached to Scott's motion for release, his parents are supportive of their son and willing to be third-party custodians. Scott requests that the Court release him upon conditions that it may impose or, in the alternative, release him to a halfway house with various other conditions that the Court deems appropriate. Scott represents that he would abide by a no-contact order and any other conditions of release that the Court sets. Scott states that he has every intention of abiding by conditions and appearing for the Court.

On May 18, 2010, the United States filed its response. The United States opposes release of Scott pending trial. The Court has talked to United States Probation Officer Sandra Day, and she advises that Scott's information remains uncorroborated. She, too, continues to recommend detention.

## THE LAW REGARDING PRE-TRIAL RELEASE

Title 18 United States Code § 3145(b) states, in relevant part: "If a person is ordered detained by a magistrate . . . the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." A defendant's motion for review of a

Magistrate Judge's detention order "shall be determined promptly." 18 U.S.C. § 3154(b). "The motion should be considered and ruled upon in the first instance by a district judge in the court of original jurisdiction." United States v. Cisneros, 328 F.3d 610, 615 (10th Cir. 2003). "The Tenth Circuit explained that the court having original jurisdiction is the district court in which the indictment charging the defendant was returned and in which the prosecution is pending." United States v. Martinez, No. CR 09-2439 JB, 2009 WL 5171853, at *2 (D.N.M. Oct. 28, 2009)(Browning, J.)(internal quotation marks and alterations omitted). The standard of review over such detention orders is de novo. See United States v. Kelsey, 82 Fed. Appx. 652, 653 (10th Cir. 2003)("[A] magistrate judge denied Mr. Kelsey's request for release on bail after conducting a detention hearing. Mr. Kelsey appealed to the district court, which redetermined the issue *de novo* after holding another bail hearing . . . ."); United States v. Gonzales, 149 F.3d 1192 (Table), 1998 WL 321218, at *1 (10th Cir. June 5, 1998)(referring to the district court's de novo review of a magistrate judge's detention order); United States v. Koenig, 912 F.2d at 1192-93 (holding that a district court "should review the evidence before the magistrate and make its own independent determination whether the magistrate's findings are correct, with no deference.").

    The Bail Reform Act of 1984 generally expresses a preference for release upon conditions as the court may fashion, starting from release on personal recognizance and moving to various conditions, such as posting an appropriate bond, maintaining employment, restrictions on travel, regular reporting, and drug testing. The United States must prove risk of flight by a preponderance of the evidence, see, e.g., United States v. Cisneros, 328 F.3d at 617; United States v. Xulan, 84 F.3d 441, 442 (D.C. Cir. 1996)(per curiam), and it must prove dangerousness to any other person or to the community by clear-and-convincing evidence, 18 U.S.C. § 3142(f). In determining whether there are conditions of release that will reasonably assure the appearance of the person as required

and the safety of any other person and community, the court must consider, among other things, the history and characteristics of the person, including the person's character, physical and mental conditions, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, and criminal history. See United States v. Cisneros, 328 F.3d at 617 (quoting 18 U.S.C. § 3142(g)). Additionally, the court must consider whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense. See 18 U.S.C. § 3142(g). When the court considers the nature and circumstances of the offense charged, the court may consider, among other things, whether the offense charged involves a crime of violence or involves a minor child. See 18 U.S.C. § 3142(g)(1) ("The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning . . . the nature and circumstances of the offense charged, including whether the offense is a crime of violence, . . . or involves a minor victim[.]")

Under the Bail Reform Act, a defendant may be detained pending trial only if a judicial officer finds "that no condition or combination of conclusions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(b), (c), and (e). Additionally, the court must choose the least restrictive condition or combination of conditions to reasonably assure the defendant's appearance and the safety of the community. See 18 U.S.C. § 3142(c)(1)(B).

Notwithstanding the preference for release, Congress has mandated that certain crimes, even committed by persons who otherwise have no criminal history, are presumed to require pre-trial detention because of the danger persons who commit those crimes pose to the community. See

United States v. Martinez, 2009 WL 5171853, at *5 ("When the defendant is charged with certain crimes, however, a presumption might arise that the defendant is a flight risk and a danger to the community.")(citing United States v. Villapudua-Quintero, 308 Fed. Appx. 272, 273 (10th Cir. 2009), and United States v. Vorrice, 277 Fed. Appx. 762, 762 (10th Cir. 2008)). The concept of dangerousness as used in the Bail Reform Act is substantially broader than is the term as used generally. See United States v. Delker, 757 F.2d 1390, 1393 (3d Cir. 1985)("The legislative history . . . specifies that the concept of a defendant's dangerousness as used in the Act is to 'be given a broader construction than merely danger of harm involving physical violence.'")(quoting S. Rep. No. 225, 98th Cong., 1st Sess. 12-13 (1983), reprinted in 1984 U.S.C.C.A.N. 1, 15 (Supp. 9A)). Dangerousness includes the potential that a defendant might cause physical harm to another. It also incorporates the broader societal danger that a defendant might engage in non-violent forms of criminal activity which is a detriment to the community at large. See United States v. Cook, 880 F.2d 1158, 1161 (10th Cir. 1989).

## ANALYSIS

The United States has not shown, nor attempted to show, that Scott presents a risk of nonappearance, and the Court believes Scott has overcome any presumption against the risk of nonappearance. After carefully considering the briefs on Scott's appeal, the detention hearing, and the bail report, however, the Court concludes that the United States has shown, by clear-and-convincing evidence, that there are no conditions available, or which may be fashioned, to adequately manage the risk of danger as it relates to Scott. Notwithstanding the arguments that Scott makes in his motion, the Court believes that his present charges are not compatible with release and therefore orders Scott's continued detention before trial.

### 1. **<u>Rebuttable Presumption</u>.**

Firing a shotgun at an apartment complex constitutes an assault with a dangerous weapon, which is one of the crimes Congress has presumed requires pre-trial detention, because it is a crime of violence involving a firearm.  See <u>United States v. Bruce</u>, 458 F.3d 1157, 1164 n.4 (10th Cir. 2006)(explaining that assault with a dangerous weapon under § 113(a)(3) includes as an element "the intent to commit bodily harm")(quoting <u>United States v. Johnson</u>, 967 F.2d 1431, 1436 (10th Cir. 1992)); 18 U.S.C. §§ 3142(e)(2) & (3); 18 U.S.C. § 3156(a)(4) (defining "crime of violence" as one "that has an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another").  <u>See</u> <u>also</u> <u>United States v. Pete</u>, No. CR 08-1981 JB, 2008 WL 5974965, at *8 (D.N.M. Dec. 22, 2008)(Browning, J.)(finding a violation of 18 U.S.C. § 113(a)(6) is a crime of violence under 18 U.S.C. § 3156).  Moreover, Scott does not deny that he is charged with a crime of violence.  Accordingly, the Court must begin its analysis with the presumption that no condition or combination of conditions will reasonably assure Scott's appearance and assure the safety of the community.  <u>See id.</u>  Nothing in Scott's Appeal of Detention Order overcomes that statutory presumption.

From the starting point of presumed detention, as §§ 3142(e)(2) & (3) require, the Court must weigh the § 3142(g) factors to determine if the presumption has been overcome.  The factors set forth in that subsection that weigh in favor of detention include:  (i) the nature and circumstances of the crime; (ii) whether the crime involved a minor victim or a firearm; (iii) the weight of the evidence against Scott; (iv) and the danger that would result if Scott were to be released.  An analysis of these factors demonstrates that the Court should not disturb the detention order.

### 2. **<u>The Nature and Circumstances of the Offense Charged</u>.**

A grand jury has indicted Scott for assault with a dangerous weapon -- a shotgun.  This

-9-

offense qualifies as a crime of violence as defined by 18 U.S.C. § 3156(a)(4)(A) because it has as an element the use, attempted use, or threatened use of physical force against the person or property of another.  See United States v. Bruce, 458 F.3d at 1164 n.4 (10th Cir. 2006)(explaining that assault with a dangerous weapon under § 113(a)(3) includes as an element "the intent to commit bodily harm").  In addition, it qualifies as a crime of violence under § 3156(a)(4)(B) because it is a felony that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.  Moreover, inside the apartment into which Scott shot were three juveniles, ages sixteen years, seven years, and eight months.  Because the crimes charged are violent offenses involving a deadly weapon and minor victims, this factor weighs strongly in favor of detention.

### 3.     **The Weight of the Evidence.**

This case is not one where there is doubt about who fired the weapon or why.  To the contrary, Scott confessed to firing the gun at the apartment complex and suggested that he did so to exact revenge because he felt Nez caused his breakup with his girlfriend.  Moreover, the gun Scott used was found inside the pickup truck, Begay implicated him in the crime, and law enforcement recorded a post-arrest conversation between Scott and Begay during which they discuss the crime.  The weight of the evidence against Scott is strong, and thus this factor weighs strongly in favor of detention.

### 4.     **Dangerousness.**

The evidence establishes that Scott harbors extreme ill will toward Nez, which compelled him to lash out with a burst of violence.  While use of that conduct to resolve a personal dispute is troubling on its own, it is even more troubling that Scott's willingness to resort to violence based on whatever dispute he has with Nez was not restrained in any way by the presence of five

apparently innocent people -- three of whom are juveniles -- with whom he has no dispute. Given the circumstances of this crime, the Court is not inclined to give Scott any benefit of the doubt, because so little appears in doubt, and what the Court knows is, beyond a doubt, disturbing.

Even if the Court were to assume that Scott did not know that five additional people were in the apartment into which he shot, that ignorance does not change the calculus. If Scott was ignorant of other people in the apartment, the best that can be said of Scott, in terms of dangerousness, is that he recklessly disregarded the lives of others by shooting into an apartment that may or may not be occupied by persons other than his target. In the detention analysis, it does not matter a great deal whether Scott had a reckless disregard for human life or was intentionally dangerous to all the victims in the apartment. In either event, the factor weighs strongly in favor of detention.

Scott lives too close to Nez to make release to Shiprock to stay with Scott's parents a viable option. In any case, Scott appears to have been a good citizen who snapped over a broken relationship with a girlfriend. He then did something violent. The crime charged is too serious to risk letting it be repeated before trial. The violence of the alleged offense is too serious to justify granting Scott the relief he seeks.

**IT IS ORDERED** that the Appeal of Detention Order is denied. The Detention Order is affirmed, and Defendant Jarin P. Scott shall continue to be detained before trial.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Kenneth J. Gonzales
  United States Attorney
Jack E. Burkhead
Cynthia Weisman
  Assistant United States Attorneys
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

Jason Bowles
Bowles and Crow
Albuquerque, New Mexico

    *Attorneys for the Defendant*